CASE NO. 10-10746

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JEFF HEMPHILL,

APPELLANT

V.

CELANESE CORP.,

APELLEE

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

BRIEF OF APPELLANT JEFF HEMPHILL

> F. Benjamin Riek III
> 100 N. Central Expy., Suite 901
> Richardson, TX 75219
> (214) 306-8755
> Fax (972) 231-3445
>
> Counsel for Appellant

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

Pursuant to Fifth Circuit Rule 28.2.1, Appellant asserts the following are the interested parties to this appeal;

1.    Jeff Hemphill;

2.    F. Benjamin Riek III, Appellant's Counsel;

3.    Celanese Corp.,

4.    Clay Thompson, Thompson Coburn, Appellee's Counsel;

5.    Charles Poplstein, Thompson Coburn, Appellee's Counsel;

6.    Stephen Higgins, Thompson Coburn, Appellee's Counsel; and

7.    Robert Shredder, Bracewell Guiliani, Counsel for Appellee.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents a unique opportunity to the Fifth Circuit to address unanswered questions regarding the amount of proof necessary to establish a violation of Section 803 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. This Court has previously addressed the SOX Act in *Allen v. Administrative Review Board,* 514 F.3d 468 (5th Cir. 2008) where the burden of proof was set forth. In *Allen* this Court did not have the opportunity to address the quantum of proof necessary to establish the final element of a *prima facie* case and the proof required for the employer to establish the available defense that it would have taken the same adverse action without respect towards the employee's protected activity.

This case raises two crucial issues; (1) what evidence, when viewed in a light most favorable to the non-movant, is sufficient to permit an inference that one of the reasons for the adverse action was the employee's protected activity that was known to the decision maker and (2) what are the

requirements for an internal investigation into an alleged terminable offense in order to meet the clear and convincing evidence standard required of an employer to rebut a *prima facie* case of retaliation for reporting SOX related improprieties?

Given the District Court's ruling granting summary judgment to Celanese, these two important issues are ripe for oral argument where the details of the record can be discussed in detail.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons                          2

Statement Regarding Oral Argument                   3

Table of Contents                                              5

Table of Authorities                                           6

Jurisdictional Statement                                    8

Statement of Issues Presented                            9

Statement of the Case                                        10

Statement of Facts                                            11

Summary of Argument                                      17

Legal Argument                                               19

     Standard of Review                                   19

     The District Court Erred In Failing to Properly Apply          20
     The Contributing Factor Element to Hemphill's Sarbanes-
     Oxley Claim

     Despite the District Court's Finding, Celanese Has Failed     24
     To Establish By Clear and Convincing Evidence It Would
     Have Terminated Hemphill Despite His Complaints to His
     Supervisor

Conclusion                                                       30

Certificate of Service                                         31

Certificate of Compliance                                 31

TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

*Allen v. Admin. Rev. Bd., 514 F. 3d 468 (5th Cir. 2008)*                          20.21

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242(1986)*                              19

*Bolton v. City of Dallas, 472 F.3d 261 (5th Cir. 2006)*                           19

*Celotex Corp., v/ Catrett, 477 U.S. 317 (1986)*                                   19

*EEOC v. Sears Roebuck & Co., 155 F.3d 799 (8th Cir. 2000)*                         28

*Goldsmith v. Bagby Elevator Co., 513 F.3d 1261 (11th Cir. 2008)*                  24

*Harvill v. Westwood Communications, LLC, 433 F.3d 428 (5th Cir. 2005)*            30

*Klopfenstein v. PCC Flow Tech. Holdings, Inc., ARB Case No. 04-149*               21

*Marano v. Department of Justice, 2 F.3d 1137 (Fed. Cir. 1993)*                    20

*Martco Ltd. P'ship. v. Williams, Inc., 588 F.3d 864 (5th Cir. 2009)*             19

*Martun  v. Toledo Cardiology Consultants, Inc., 548 F.3d 405 (6th Cir. 2008)*    28

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574 (1986)*         19

*Palasota v. Haggar Clothing Co., 342 F.3d 569 (5th Cir. 2003)*                   19

*Smith v. Chrysler Corp., 155 F.3d 799 (8th Cir. 1998)*                           28

*Tisdale v Federal Express Corp., 415 F.3d 516 (6th Cir. 2005)*                   29

*Travelhost, Inc., v. Blandford, 68 F.3d 958 (5th Cir. 1995)*                     25

*Trujillo v. PacifiCorp., 524 F.3d 1149 (10th Cir. 2005)*                         29

*Williams v. Admin. Rev. Bd., 376 F.3d 471 (5th Cir. 2004)*                       25

**Statutes**

Federal Question Jurisdiction, 28 U.S.C. § 1331                          8

Sarbanes-Oxley Act, 18 U.S.C. § 1514A                          8,10,19,22

Whistleblower Protection Acr, 5 U.S.C. § 1221(e)(1)                          23

**Regulations**

29 C.F.R. § 1980.103(e)                          8

29 C.F.R. §1980.104(b)(1)(i)-(iv)                          20

29 C.F.R. §1980.104(b)(2)                          21

# <u>JURISDICTIONAL STATEMENT</u>

This matter in on appeal from the final order of the United State District Court for the Northern District of Texas, Dallas Division granting Defendant-Appellee's Motion for Summary Judgment. Since this was a final order of the District Court, an appeal to the Fifth Circuit Court of Appeals is permitted by 28 U.S.C. § 1291.

Jurisdiction was proper in the District Court in this matter pursuant to 28 U.S.C. § 1331, and 18 U.S.C. § 1514A(b)(1)(A) and (B) and 29 C.F.R. § 1980.103(e).

## STATEMENT OF ISSUES PRESENTED FOR REVIW

### ISSUE NO. 1

Whether the District Court erred in finding that Hemphill failed to prove a causal connection between his complaints regarding serious record keeping errors in violation of Section 15 of the Exchange Act and the termination of his employment by Donna Wegner despite cautioning Appellant not to "make waves' about the violations he discovered?

### ISSUE NO. 2

Whether Celanese Corp. established by clear and convincing evidence that is would have terminated Hemphill even though it s investigator failed to interview critical witnesses to the alleged "terminable event" and thus was not able to verify that Appellant was disingenuous when he denied yelling at a co-worker?

## <u>STATEMENT OF THE CASE</u>

This appeal is taken for the entry of summary judgment in favor of Celanese Corporation by the U.S. District Court for the Northern District of Texas, Dallas Division on June 17, 2010 on Appellant's claims under the Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. After his termination of employment by Celanese, Hemphill filed a timely complaint with the Occupational Safety and Health Commission. OSHA conducted an investigation and determined the complaint had no merit. A timely Petition was filed with the U.S. Department of Labor's Office of Administrative Law Judges. During the pendency of the case at the ALJ level, the parties undertook discovery and conducted the depositions of relevant witnesses. Prior to any hearing before the ALJ, Appellant refilled this action in federal court pursuant to 18 U.S.C. § 1514A(b)(1)(A).

## STATEMENT OF FACTS

Celanese is a publically traded company engaged in the manufacture and distribution of industrial chemicals. In March, 2006 Celanese hired Hemphill as an Internal Audit Manager in the Global Audit Services Group. Hemphill's direct supervisor was Robin Stephenson, Director of Internal Audit. She in turn reported to Donna Wegner, Vice President of Internal Audit.

As part of his duties in the Internal Audit department Hemphill was assigned to lead an audit of the Octolan construction project in Mexico (R. 532). During the course of the audit, it was brought to his attention that there were several unusual findings (Id.). Significant among them were the payment of a necessary municipal permit with funds that were allocated for travel expenses associated with the construction project, the transfer of title of a company owned truck to a Mexican citizen and the relationship of an employee with the particular municipal government (R. 578-80). Hemphill reported these findings to the Vice President for Internal Audit, Donna Wegner and requested that additional action be taken to address his concern that the travel account records were inaccurate, that there maybe a violation of the Foreign Corrupt Practices Act by the transfer of the truck to a foreign national (R. 578-80). He requested that a forensic auditor be retained to

determine of there was any fraud associated with the findings of the audit (R. 580). This occurred on April 2007 (R. 582-84). Hemphill expressed concern that given the improper use of travel funds to pay for a capital expense, the travel records of this project were in accurate (R. 578-80).

After meeting with Wegner, Hemphill and other members of his staff decided the audit findings should be raised to Gary Rowan, Celanese Compliance Officer (R. 586-98). During this meeting Hemphill expressed his concern over the failure of the company to maintain accurate records of its the travel expenses and a concern that there may be a FCPA violation in connection with the project (R. 564-66; 600-08). He sought advice on how to proceed with the audit findings in order to correct these problems (R. 588-60). When Wegner found out he met with Rowan, she was upset for going over her head (R. 550-54).

When the Octolan audit was finished Wegner told Plaintiff that if he wanted to have a non-combative work environment, he should not develop issues (R. 552). In other words, she would challenge him on everything …… if Hemphill wanted a better environment, he should reduce issues (Id.). This warning occurred in June 2007 (R. 554). Plaintiff felt Wegner gave him this warning because she wanted to have positive control or test scores to meet her performance goal of a 90% pass rate (R. 554-56).

For his next assignment, Hemphill and other staff were asked to perform a detail review of the travel and entertainment records of several employees. In the course of this detailed review, Hemphill and his staff discovered severe violations of the company's travel and entertainment record keeping requirements (R. 558-60). Without the supporting documentation Hemphill was concerned that there was no way to determine of the claimed expenses were legitimate (R. 572). This would lead, in his view, to a books and records violation of the SEC rules (Id.) The senior salesman, Ron E had used corporate funds to pay out of pocket expenses for an outside business franchise he was investing along with his supervisor (R. 560). He was also concerned that there was the opportunity for misuse of company funds since the manager approving Ron E's T&E reports was also involved in the Closet Factory store (R. 576) He also had spent large sums of undocumented money at the company's resort to entertain guests (R. 594-96). Hemphill reported these findings to Wegner and expressed concerns that there was a systemic problem with the travel and entertainment books and records (R. 560-62). He clearly told Wegner and Rowan that these findings impaired the accuracy of these books and records (R. 570).

Other employees, who were reviewed, including, Regina F, were found to have been part of an ongoing record keeping problem with the

business expense travel records (R. 610).  When he pressed Wegner to raise issues regarding the Travel and Entertainment to the Audit Committee, she rebuffed him stating that if he wanted to be successful at Celanese, he should not make waves regarding these findings and those of the Octolan Audit (R. 550). The foregoing activities occurred in the June to July time frame in 2007 (R. 586-88).

Near the end of the training session, the Internal Audit employees would have a night out to build teamwork in the department (R. 535). Hemphill was in charge of arranging for the rental of a boat for that evening's activities (R. 535, 538). He asked one of the department's administrative staff, Shirley Hall to use a credit card in making the arrangements (R. 533). On August 14, 2007 he spoke to her requesting information regarding the rental. At that point, he began to speak to her form his office and walking out into the hall way (R. 534). Defendant claims that Plaintiff was yelling at Hall in an unprofessional manner and initiated an investigation by the Human Resources Department conducted by Zarina Curry.

Ms. Curry's investigation failed to interview employees who were closest to Plaintiff's office when the incident occurred. In particular she did not interview Melody Brenda Watson, Ken Lamb or Joe Mauriello (R. 618).

In her interview with Plaintiff, he told her he did not yell at Hall  (R. 533). In fact this was Curry's first investigation since she was hired at Celanese  (R. 616-17). Instead she relied on her interviews with Hall, John Fotheringham and Dorothy Watson  (R. 619). If she had interviewed Melody Watson, she would have learned that she was present when Jeff spoke to Hall and she did not hear any yelling (R. 539, 626, 627-629). When she completed her investigation, she prepared her report and submitted it for review by Alan Maxwell, head of Human Resources and Joe Fox, Assistant General Counsel (R. 619). After obtaining their concurrence for termination, she met with Wegner who had the final decision making authority over this decision (R. 620). After reviewing this report, Wegner decided that Hemphill should be terminated (R. 638-39. Even though she had other options (R. 641-42).

Subsequently, Hemphill was called into a meeting with Wegner, Curry and Robin Stevenson he was being terminated on September 4, 2007 (R. 536-37). Yet this was the same supervisor who had yelled at Plaintiff for going over her head a few months before when she discovered that he met with Gary Rowan regarding the Ocotan Audit findings (R. 550-51). She was also the same manager who warned Plaintiff that if he wanted to get along in her department, he should not make waves (Id.).  This warning was given after Hemphill had raised many issues regarding the record keeping

surrounding the travel and entertainment expenses and the findings of the Octolan audit in the spring of 2007 (R. 570).  Obviously there is a strong inference that when the opportunity presented itself in the form of the alleged yelling incident, Wegner used it to fire Hemphill and get rid of an employee that she did not want issues being developed, raised and questioned (R. 550-54).   This inference is reinforced by the failure of the company to interview material witnesses to the key event and then base the termination decision on Plaintiff's purported failure to tell the truth  about the incident and brand him a liar.

# SUMMARY OF ARGUMENT

Plaintiff has brought this action pursuant to Section 806 of the Sarbanes Oxley Act of 2002, 18 U.S.C. § 1514A (SOX) which provides a remedy for an employee of a publically traded company for retaliation for reporting violations of various forms of securities fraud and violations of any rules or regulations of the Security and Exchange Commission (SEC). Hemphill was terminated for reporting ongoing and serious record keeping violations of Celanese's travel and entertainment (T&E) accounts and an audit of a foreign construction project he discovered while performing his assigned duties as an accountant in Defendant's Internal Accounting Department. These violations included improper travel and entertainment charges by several managers, the failure of managers to accurately report outside business interests they owned discovery irregularities in accounting during an audit of the Octotlan plant expansion, and taking improper business expense deductions by Celanese which resulted in inaccurate books and records of the company's T&E accounts.

Plaintiff reported his findings to the proper supervisors within the company, requesting that proper action be taken to correct the problems he discovered and to correct the company's T&E records to accurately reflect the actual business deductions to which Celanese was entitled. Despite

17

requesting that Donna Wegner, Vice President of Internal Audit address these findings with upper management, Hemphill discovered that Celanese was not concerned with prompt remediation. Rather, he was summarily terminated for an alleged incident where he yelled at a co-worker who failed to complete an assignment. Yet the staff that was closest to Plaintiff and the third party testified that no such event occurred.

In reality, Hemphill was drawing attention to misconduct of numerous upper managers that affected the accuracy of the company's T&E records. He discovered indicated that the company was taking excessive business expense deductions for T&E that were not supported by the required records to justify the expenses. While Celanese may have had tax credits available that would preclude the need to use the inflated business expense deduction, the fact is that the SEC required records of T&E expenses were not accurate. Realizing that Plaintiff had discovered irregularities, the Vice President of Internal Audit made use of a fictitious event to bring about the termination of Hemphill's employment.

# LEGAL ARGUMENT

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*, applying the same standard as the district court. *Bolton v. City of Dallas,* 472 F.2d 261, 263 (5th Cir. 2006). The inquiry "is limited to the summary judgment record before the trial court." *Martco Ltd. P'ship v. Wellons, Inc.,* 588 F.3d 864, 871 (5th Cir. 2009). The Court must review the evidence on the light most favorable to the non-moving party, *Matsushita Elec, Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), and the movant has the burden of showing this court that summary judgment was appropriate. *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1986). In reviewing such a motion, the Court must draw all reasonable inferences in favor of the non-moving party. *Palasota v. Haggar Clothing Co.,* 3442 F.3d 569, 574 (5th Cir. 2003). The Court is also required not to assess the credibility of the witnesses or weigh the evidence. *Palasota* at 342 F.3d at 574. Summary judgment is appropriate where competent summary judgment evidence demonstrates no issues of material fact and the moving party is entitled to judgment as a matter of law. *Bolton,* 472 F.3d at 263; *see* Fed. R, Civ. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## THE DISTRICT COURT ERRED IN FAILING TO PROPERLY APPLY THE CONTRIBUTING FACTOR ELEMENT TO HEMPHILL'S SARBANES-OXLEY CLAIM

Despite Hemphill having successfully established the first three elements of a claim under Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, the District Court erred when it failed to find a genuine issue of material fact whether Appellant's protected activity was a contributing factor in the termination of his employment by Celanese Corporation. In order for an employee to invoke the anti-retaliation protections of Section 806 of the Sarbanes Oxley Act, complainant must prove by a preponderance of the evidence that; (1) he engaged in protected activity; (2) that the employer knew that he had engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Allen v. Admin. Rev. Bd.,* 514 F.3d 468, 475-76 (5th Cir. 2008) citing 29 C.F.R. 1980.104(b)(1)(i)-(iv). In granting Celanese's Motion for Summary Judgment, the District Court found that Hemphill had presented sufficient evidence to establish genuine issues of material fact as to the first three elements.

As to the fourth element, that Appellant's protected activity was a contributing factor in his termination, the District Court found that Hemphill had offered no evidence  tying Wegner's knowledge of his reports to her

decision to fire him. The trial court's finding ignores the inferences permissible under Sarbanes-Oxley as set forth in the implementing regulations. In particular, the regulation at 29 C.F.R. § 1980.104(b)(2) state that the Secretary shall conduct an investigation if the evidence submitted by the claimant …. "gives rise to an inference that the [employer] knew or suspected that the employee engaged in protected activity and that activity was a contributing factor in the unfavorable personnel action." In *Allen,* 514 F.3d at 476 n.3, a "contributing factor" is any factor, which alone or in combination with other factors, tends to affect in anyway the outcome of the decision. The contributing factor standard was "intended to overrule exiting case law, which requires a whistleblower to prove that his protected conduct was a 'significant,' 'motivating.' 'substantial,' or predominant' factor in the personnel action in order to overturn that action." *Klopfenstein v. PCC Flow Technology Holdings, Inc.,* ARB Case No. 04-149, 2006 WL 324904, at *13, citing *Marano v. Department of Justice,* 2 F.3d 1137, 1140 (Fed, Cir. 1993)(interpreting the Whistleblower Protection Act, 5 U.S.C. §§1221(e)(1)).

   As part of his duties in the Internal Audit department Hemphill was assigned to lead an audit of the Octolan construction project in Mexico (R. 532). During the course of the audit, it was brought to his attention that there

were several unusual findings (Id.). Significant among them were the payment of a necessary municipal permit with funds that were allocated for travel expenses associated with the construction project, the transfer of title of a company owned truck to a Mexican citizen and the relationship of an employee with the particular municipal government (R. 530). Hemphill reported these findings to the Vice President for Internal Audit, Donna Wegner and requested that additional action be taken to address his concern that the travel account records were inaccurate and that there maybe a violation of the Foreign Corrupt Practices Act by the transfer of the truck to a foreign national (R. 578-80). He requested that a forensic auditor be retained to determine of there was any fraud associated with this findings of the audit (R. 580). This occurred on April 2007 (R. 582-84). When Hemphill reported his findings to Wegner he stated that these actions rendered the travel account for this project in accurate (R. 578-80).

After meeting with Wegner, Hemphill and other members of his staff decided the audit findings should be presented to Gary Rowan, Celanese Compliance Officer (R. 586-98). During this meeting Hemphill expressed his concern over the failure of the company to maintain accurate records of its the travel expenses and a concern that there may be a FCPA violation in connection with the project (R. 564-66). He sought advice on how to

proceed with the audit findings in order to correct these problems (R. 588-92). When Wegner found out he met with Rowan, she was upset for going over her head (R. 550-54).

When the Octolan audit was finished Wegner told Plaintiff that if he wanted to have a non-combative work environment, he should not develop issues (R. 552). In other words, she would challenge him on everything …… if Hemphill wanted a better environment, he should reduce issues (R. 552). This warning occurred in June 2007 (R. 554). Plaintiff felt Wegner gave him this warning because she wanted to have positive control or test scores to meet her performance goal of a 90% pass rate (R. 554-56). While the District Court may find it unremarkable that Hemphill informed Donna Wegner of the irregularities, the inference was clearly made that further "causing waves" would be detrimental to his career.

These statements of Wenger, made in the course of discussing the findings of the audits conducted by Hemphill permit an inference that Hemphill's reporting of the record keeping issues was not welcomed and would lead to adverse consequences. Clearly, such warnings to "reduce issues" if wanted a better environment constitute a factor, which alone or in combination with other factors, tends to affect in anyway, the outcome. While not direct evidence of animus, these statements are circumstantial

evidence that Wegner, the individual who ultimately made the termination decision (R. 620), did not want Hemphill pursuing these matters. These warnings occurred in June 2007 and were certainly known to Wegner when she agreed to the recommendation of the Human Resources Department to terminate his employment. In the context of whistle blowing, in order for an employee to show that two events were related, he must generally show that the decision maker was aware of the protected activity and the time of the adverse action. *Goldsmith v. Bagby Elevator, Co.,* 513 F.3d 1261 (11th Cir. 2008). Since the evidence must be construed in the light most favorable to the non-movant in considering a motion for summary judgment, Appellant has present sufficient evidence to satisfy the final requirement of his *prima facie* burden for a SOX claim.

### DESPITE THE DISTRICT COURT'S FINDING, CELANESE HAS FAILED TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE IT WOULD HAVE TERMINATED HEMPHILL DESPITE HIS COMPLAINT'S TO HIS SUPERVISOR

After receiving a complaint alleging Hemphill had yelled at a co-worker, the Human Resource Department commenced an investigation that failed in the most rudimentary way by ignoring countervailing evidence that exculpated Appellant. After having established a prima facie case under the Sarbanes-Oxley Act, the burden of persuasion passes to the employer to establish by clear and convincing evidence, that it would have taken the

same adverse employment action in the absence of the protected activity. *Allen,* at 475-76. It is important to note that this "independent burden shifting framework" is distinct from the *McDonnell Douglas* burden shifting framework applicable to Title VII claims. *See Williams v. Admin. Rev, Bd.,* 376 F.3d 471, 476 (5th Cir. 2004).

"Clear and convincing evidence," has been defined by the Fifth Circuit as that weight of evidence which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to be a clear conviction, without hesitancy, of the truth of the precise facts of the case. *Travelhost, Inc., v. Blandford,* 68 F.3d 958, 961 (5th Cir. 1995). Applying this rigorous standard to the evidence produced by Celanese, requires a reversal of the District Court and a remand for a trial on the merits.

Near the end of a training session, the Internal Audit employees would have a night out to build teamwork in the department (R. 535). Hemphill was in charge of arranging for the rental of a boat for that evening's activities (R. 535, 538). He asked one of the department's administrative staff, Shirley Hall to use a firm credit card in making the arrangements (R. 533). On August 14, 2007 he spoke to her requesting information regarding

the rental. At that point, he began to speak to her form his office and walking out into the hall way (R. 534). Defendant claims that Plaintiff was yelling at Hall in an unprofessional manner and initiated an investigation by the Human Resources Department conducted by Zarina Curry.

In the course of Ms. Curry's investigation she failed to interview employees who were closest to Plaintiff's office when the incident occurred. In particular she did not interview Melody Brenda Watson, Ken Lamb or Joe Mauriello (R. 618). In her interview with Plaintiff, he told her he did not yell at Hall (R. 534). In fact this was Curry's first investigation since she was hired at Celanese (R. 616-17). Instead she relied on her interviews with Hall, John Fotheringham and Sheryl Hall   (R. 619). If she had interviewed Melody Watson, she would have learned that she was present when Jeff spoke to Hall and she did not hear any yelling (R. 539, 627-29). When she completed her investigation, she prepared her report and submitted it for review by Alan Maxwell, head of Human Resources and Joe Fox, Assistant General Counsel    (R. 619). After obtaining their concurrence for termination, she met with Wegner who had the final decision making authority over this decision (R. 620). After reviewing this report, Wegner decided that Hemphill should be terminated (R. 638-40), even though she had other options (R. 641-42).

Subsequently, Hemphill was called into a meeting with Wegner, Curry and Robin Stevenson where he was informed he was being terminated on September 4, 2007 (R. 536-37). Yet Wegner was the same supervisor who had yelled at Plaintiff for going over her head a few months before when she discovered that he met with Gary Rowan regarding the Ocotan Audit findings (R. 550-54). She was also the same manager who warned Plaintiff that if he wanted to get along in her department, he should not make waves (Id.). These warnings were given after Hemphill had raised many issues regarding the record keeping surrounding the travel and entertainment expenses and the findings of the Octolan audit in June of 2007 (R. 570). Obviously there is a strong inference that when the opportunity presented itself in the form of the alleged yelling incident, Wegner used it to fire Hemphill and get rid of an employee that she did not want issues being developed, raised and questioned (R. 550-52).  This inference is reinforced by the failure of the company to interview material witnesses to the key event and then base the termination decision on Plaintiff's purported failure to tell the truth about the incident and brand him a liar.

The foregoing investigation wholly fails to justify terminating Hemphill when there are significant questions whether the alleged screaming even occurred. "When an employee is able to produce evidence that an

employer failed to make a reasonable informed and considered decision before taking an adverse action, thereby making its decisional process unworthy of credence, then any reliance placed by the employer in such a process can not be honestly held." *Smith v. Chrysler Corp.,* 155 F.3d 799, 807-08 (8th Cir. 1998)(interpreting the "honestly held" defense in a Title VII case); *Equal Employment Opportunity Commission v. Sears Roebuck & Co.,* 243 F.3d 846, 854 (8th Cir. 2000). The key inquiry is whether Celanese made a reasonable and considered decision before taking the adverse employment action to terminate Hemphill. *Smith, Id.*

A strikingly similar inadequate investigation was found to be insufficient in *Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 414-15 (6th Cir. 2008). In *Martin,* the employee was accused of making a racial slur in front of a patient, a charge which she denied. In support of the employer's decision to terminate was a statement from a coworker who allegedly overheard the statement. In conducting its investigation, the employer failed to interview a different co-worker who was in the room with the plaintiff and the patient when the alleged statement and denied any such statement was made. The second witness was not interviewed. At 408. The failure to interview the witness in the room with the patient and to rely on the first witness who merely claimed to have overheard the plaintiff, justifies

a jury to conclude that the reason for the adverse employment action was not reasonably held. This was a material fact requiring reversal of summary judgment and a trial on the merits. At. 414-15. Likewise an investigation into employee's conduct is inadequate when an employer only relies on evidence that is detrimental to the employee and fails to interview a witness favorable to the employee. Viewing the evidence in a light most favorable to the employee on the employer's motion for summary judgment requires reversal. *Trujillo v. PacifiCorp.,* 524 F.3d 1149, 1159-60 (9th Cir. 2008); *See also Tisdale v. Federal Express Corp.,* 415 F.3d 516, 529-30 (6th Cir. 2005) (failing to interview other employees involved in the same conduct that forms the basis in part for the adverse action calls into question the adequacy of the investigation).

In this matter the District Court found that Celanese fired Hemphill because he lied during the investigation when he denied he yelled at a co-worker. Yet the investigator based her decision that the event occurred without even interviewing the witnesses Hemphill identified that would exculpate him. Such negligence does not establish that the investigation was neutral and thorough. In reaching such a conclusion, the District Court weighed the evidence and made a credibility determination to believe the investigator rather than Hemphill. Such a determination is not permitted in

ruling on a motion for summary judgment. *Harvill v. Westwood, Communications, L.L.C.,* 433 F.3d 428, 436 (5th Cir. 2005). Since critical witnesses were not interviewed by the Human Resource Department during its investigation, Celanese has failed to present clear and convincing evidence of such weight that it produces a firm conviction that Appellant lied to Curry. As a result, Appellee has failed to present a material fact to warrant summary judgment.

WHEREFORE, for the foregoing reasons, Appellant requests that the District Court's order granting summary judgment be reversed and that this matter be remanded to the lower court for a trial on the merits.

Respectfully submitted,

*/s/ F. Benjamin Riek III*
F. Benjamin Riek III
State Bar No. 16906190
100 North Central Expy., Suite 901
Richardson, TX 75080
(214) 306-8755
Fax (972) 231-3445
Email: fbenjaminr@msn.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

A copy of the foregoing Appellant's Motion to Supplement the Record was served on all counsel of record by the court's electronic filing system on the date this motion was filed electronically.

*/s/ F. Benjamin Riek III*

## CERRTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5173 words, excluding parts of the brief exemtpted by Fed. R. App. P. 32(a)(7)(B)(iii).

*/s/ F. Benjamin Riek III*
Counsel for Appellant
September 25, 2010